| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ x<br>ABBY DUBOIS,<br><br>        Plaintiff,<br><br>v.<br><br>ICE.COM LEASING, INC.<br>DIAMOND FOUNDRY, INC.<br>MATT WILKINSON,<br><br>        Defendants.<br>------------------------------------------------------------ | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No: <u>19-cv-6468</u><br><br><br><br><br><br><br><br><br><br><br><br><br><br>November 14, 2019 |
|---|---|---|

## COMPLAINT

Plaintiff, Abby Dubois, by her attorney, John T. Shaban, complaining of the Defendants, sets forth and alleges as follows:

1. This is an action to enforce the terms of the parties' contracts to hire plaintiff and merge her business with defendant, to recover damages for breach of same, to recover damages for defendants' bad faith, and/or to recover damages based on defendants' unjust enrichment.

## Parties

2. Plaintiff is an individual living at 130 15th Street, Apt 1, Brooklyn NY 11215. Plaintiff is the founder, CEO, creative director, and sole owner of EACH Jewels LLC ("EACH"), a Connecticut limited liability company engaged in the business of jewelry and hair accessory design, manufacture and sales. EACH's primary place of business and main office is also 130 15th Street, Apt 1, Brooklyn NY 11215.

3. Defendant ICE.COM Leasing, Inc. ("ICE") is a Delaware corporation with its principle offices in San Francisco, California. At all the times relevant herein, ICE operated in,

1

among other places, New York as an online jewelry seller and supplier.

4. Defendant Diamond Foundry, Inc. ("Diamond Foundry") is a Delaware corporation with its principle offices in San Francisco, California. Diamond Foundry a manufacturer and seller of diamonds, and a successful player in the fine jewelry and engagement market.

5. Defendant Matt Wilkinson is an individual residing primarily in Marin, California. Upon information and belief, and for all times relevant herein, Wilkinson is the founder and CEO of ICE. Upon information and belief, Wilkinson is also a GM of Diamond Foundry.

6. Upon information and belief Diamond Foundry acquired some or all of ICE.COM Leasing, Inc. in late 2018 and thus became a successor entity to some or all of ICE.COM Leasing, Inc.'s rights and obligations, including the agreements and obligations described herein. Accordingly, Diamond Foundry is hereinafter included in the defined term "ICE."

## Jurisdiction and Venue

7. This Court has jurisdiction over the within case pursuant to 28 USC §1332 based on the diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

8. Venue is appropriate under 28 USC §1391 because most of the actions alleged below occurred in this district, Plaintiff resides in this district, and the business relationship alleged herein was based in this district.

## Allegations Relevant to All Counts

9. In February 2018 Plaintiff met with Wilkinson to discuss (a) Wilkinson's and his partner Dave Hersh's recent purchase of the controlling interest in ICE, and (b) Plaintiff

providing her assistance with the ICE operations, its website and securing market partners.

10. Plaintiff made recommendations concerning production strategies and brand partners, including a recommendation for ICE to partner with Diamond Foundry.

11. In March 2018 Wilkinson proposed to make EACH an ICE partner, and tendered a written contract to Plaintiff in New York where under EACH would act as exclusive vendor for ICE operating from New York.

12. Plaintiff rejected this proposal and advised Wilkinson that such exclusive relationships were counter to industry practice. Wilkinson heeded this advice and thereafter restructured his business plans.

13. In or about April 2018, and after receiving additional advice from Plaintiff on styles and business strategy, ICE launched an e-commerce partnership with Diamond Foundry and its main jeweler Zaven.

14. In May and June 2018, Plaintiff was engaged in fundraising for EACH. Wilkinson learned of Plaintiff's efforts, offered to help Plaintiff, and requested that Plaintiff send him EACH's fundraising materials. Within 24 hours of his receipt of the "pitch deck" materials, Wilkinson told Plaintiff that he wanted to fund EACH, and that he would raise funds from both his pool of investors and Dave Hersh's private equity firm. At that time the first round of funding was targeted at $350,000.

15. In July 2018 Wilkinson informed Plaintiff that he had access to $800,000 to fund EACH. He stated that he would pursue and deliver the funds if (a) Plaintiff worked for ICE, and (b) EACH eventually merged into ICE to combine internal operations and staff members for both brands while operating out of New York.

16. In August 2018 Wilkinson sent Plaintiff an initial capitalization table, and the

parties began negotiating the new operating agreement.

17. Plaintiff thereafter flew to San Francisco to meet with Plaintiff and Dave Hersh. At these meetings the parties agreed upon a business strategy, hiring needs and branding parameters.

18. Wilkinson thereupon assigned Plaintiff responsibility for managing certain outside vendors of ICE, which she began to do immediately, and encouraged Plaintiff to begin recruiting for ICE's first hire post-merger, a Director of Sales for Wholesale.

19. In September 2018 Wilkinson assured Plaintiff that the deal was on track, and that she should continue to recruit employees so they would be ready deploy the new capital once secured.

20. Wilkinson then sent Plaintiff a term-sheet, where after the parties adjusted certain terms and contacted lawyers to create final deal documents.

21. By October 2018 the new business arrangement was manifested in two separate and standalone documents, both of which were drafted in final by Wilkinson and sent to Plaintiff: (a) an employment contract between ICE and Plaintiff with an attached non-compete agreement; and (b) an Asset Purchase Agreement ("APA") where under ICE would purchase of the assets of EACH from Plaintiff for 1.165 million preferred shares in ICE.

22. On or about October 26, 2018 Wilkinson delivered the employment contract to Plaintiff for her review, acceptance and signature.

23. The employment contract was signed and dated on October 28, 2018 by both Wilkinson and Plaintiff, whereupon Plaintiff became an employee and a board member of ICE.

24. Plaintiff immediately began performing under the employment contract, sent weekly reports to Wilkinson, incurred expenses, and hired (with Wilkinson's approval) Ms.

Heidi Mackay as a full time ICE Director of Sales to operate out of New York while reporting to Plaintiff.

25. Also in October 2018, Wilkinson delivered the APA agreement to Plaintiff, along with a signed stock certificate dated October 1, 2018 granting Plaintiff 1.165 million preferred shares in ICE as required in the APA.

26. In November, however, Wilkinson informed Plaintiff that he had decided to abandon and/or refuse to perform under the parties' APA. Upon information and belief Wilkinson had, without Plaintiff's knowledge, also been working on a parallel but competing business arrangement to with a different company – *to wit*, to be purchased by and/or merge with Diamond Foundry. (Upon information and belief, and as alleged above, such purchase and/or merger has since occurred, whereupon Wilkinson became the GM of Diamond Foundry.)

27. Wilkinson proposed that, rather than honor the parties' APA, he would instead: (a) invest in EACH as a stand-alone brand, (b) continue to pay Heidi Mackay's salary under ICE; (c) work to get $200,000 to EACH from his investors before year's end, and (d) put in another $100,000 per month personally until April. Wilkinson proposed to extend a loan to EACH, secured by a promissory note from Plaintiff (which he would release in the New Year), and to continue to provide Plaintiff with benefits from ICE until his new funding was secured.

28. Plaintiff rejected the proposed replacement arrangement and demanded that Wilkinson and ICE honor both the parties' existing employment contract and the terms of the APA.

29. Wilkinson (and Hersh) thereupon promised that ICE would honor the existing employment agreement, but nevertheless refused to consummate in full the terms of the APA.

30. Despite the above promises, and despite demand by Plaintiff following her

performance under the parties' agreements, ICE has honored neither the employment agreement nor the APA by, among other things, failing to (a) pay Plaintiff her salary, (b) reimburse Plaintiff for her expenses, and (c) secure funding and provide support for the aforementioned enterprise.

## FIRST COUNT
Breach of Employment Contract (ICE)

31. Plaintiff repeats and realleges paragraphs 1 through 30 above as if fully set forth herein.

32. By virtue of the above, a contract of employment existed between Plaintiff and ICE.

33. By virtue of the above ICE has breached that contract.

34. By virtue of the above Plaintiff has been damaged.

## SECOND COUNT
Breach of APA (ICE)

35. Plaintiff repeats and realleges paragraphs 1 through 34 above as if fully set forth herein.

36. By virtue of the above, a contract existed between Plaintiff and ICE in the form of the APA.

37. By virtue of the above ICE has breached that contract.

38. By virtue of the above Plaintiff has been damaged.

## THIRD COUNT
Breach of Covenant of Good Faith (ICE and Wilkinson)

39. Plaintiff repeats and realleges paragraphs 1 through 38 above as if fully set forth herein.

40. By virtue of the above, ICE and Wilkinson owed plaintiff a duty to act in good

faith and conduct fair dealing respectively as Plaintiff's employer and as a fellow board member of ICE.

41. By virtue of the above ICE and Wilkinson have breached that duty.

42. By virtue of the above Plaintiff has been damaged.

## FOURTH COUNT
Unjust enrichment (Wilkinson and ICE)

43. Plaintiff repeats and realleges paragraphs 1 through 42 above as if fully set forth herein.

44. By virtue of the above the defendants, and each of them, were enriched by Plaintiff's expertise, input and labor.

45. That enrichment came at Plaintiff's expense.

46. By virtue of the above, it is against equity and good conscience to permit Wilkinson and/or ICE to retain the benefit of Plaintiff's expertise, input and labor.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants for the following relief:

1. Compensatory damages at an amount to be proven at trial;

2. Punitive damages;

3. Fees and costs;

4. Such other and further relief in law and/or equity as the Court determines is just.

Respectfully Submitted

The Plaintiff
Abby Dubois


By /s/ *John T. Shaban*
John T. Shaban, Esq. (JS 1049)

**LEVINE & LEVINE, PLLC**
2 Jefferson Plaza I Suite 100
Poughkeepsie, New York 12601
Main (845) 452-2350
Fax 845-473-2200
-and-
29 Ledgewood Road
Redding, Connecticut 06896
(203) 664-1607
john@levinelevinelaw.com